# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# AT JACKSON

| | |
|---|---|
| IRA GRANT WEAVER,<br>    Plaintiff,<br><br>v.<br><br>BENTON COUNTY, TENNESSEE.<br>    Defendant. | Jury Demand<br><br>Case No. 1:22-cv-01057 |

## COMPLAINT

Plaintiff Ira Grant Weaver for his cause of action against the Defendant Benton County, Tennessee states and alleges as follows:

### PARTIES

1. Plaintiff Ira Grant Weaver is a citizen and resident of Benton County, Tennessee and was employed by Defendant Benton County, Tennessee as a Corrections Officer. He began working for the Benton County Sheriff's Office on August 7, 2016, and remained employed until he was unlawfully terminated on or about February 25, 2020.

2. The Defendant Benton County, Tennessee is a political subdivision organized under the laws of Tennessee. It is an employer, as defined by the Americans with Disabilities Act and 29 C.F.R. § 1630.2(e). The acts and omissions complained of herein were those of Benton County, Tennessee by way of the Benton County Sheriff's Office, which is responsible for ensuring the safety and welfare of citizens in Benton County and operating the Benton County Jail.

**ADMINISTRATIVE PREREQUISITE**

3. Plaintiff has complied with all conditions precedent to jurisdiction under 42 U.S.C. 12111 *et seq.*. Specifically, a charge of discrimination was filed with the Equal Employment Opportunity Commission within 300 days of the alleged unlawful employment practice. Plaintiff was terminated from his employment on or about February 20, 2020. Plaintiff timely filed a charge with the EEOC on or about September 3, 2020. Notice of a Right to Sue was issued on or about December 29, 2021 and is attached hereto as **Exhibit A**. this Complaint was filed within 90 days of Plaintiff's receipt of that Notice.

**JURISDICTION AND VENUE**

4. Plaintiff's claims are brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, and a federal question is therefore presented under 28 U.S.C. § 1331.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts and omissions of the Defendant occurred in Benton County, Tennessee, which is located within this district.

**ALLEGATIONS OF FACT**

6. Plaintiff Ira Weaver was employed as a Corrections Officer with the Benton County Sheriff's Office and worked in the Benton County Jail. As part of his job duties, Plaintiff conducted prisoner transports to and from the Jail. For security purposes, once an inmate is in a vehicle for transport, the vehicle is prohibited from stopping for any reason. A transport driver may only stop the vehicle after the inmate has been dropped off.

7. Plaintiff suffers from Type-2 diabetes, but is able to perform his job duties as a Corrections Officer. He experienced complications from diabetes, and was diagnosed with ulcerative colitis approximately 3 to 4 months after he began working at Benton County, requiring

hospitalization. After his discharge, he provided the discharge paperwork to the Defendant. The Defendant never asked for any other paperwork to be submitted, any forms to be filled out, or any further documentation from his doctors.

8. Because of the complications from the ulcerative colitis diagnosis, Plaintiff was required to take medications which have side effects causing Plaintiff polyuria, or excessive and frequent urination, which poses challenges and inhibits Plaintiff's ability to function if he is not close to a restroom. Plaintiff also developed GERD, and suffered from gastrointestinal distress.

9. Plaintiff's conditions constitute physical impairments. Plaintiff's diabetes substantially limits his endocrine function. 29 C.F.R. § 1630.2(j)(1)(iii). Plaintiff's conditions substantially limited his major life activities, including the operation of a major bodily function, including the function of his bladder, as well as his ability to stand, sit or drive for long periods of time. 42 U.S.C. § 12102(2)(A) & (B).

10. Plaintiff's impairments rendered him unable to perform self-care and his ability to work. Specifically, Plaintiff was unable to conduct long transports or long watch assignments without being relieved of duty to enable him to use the restroom.

11. The Benton County Sheriff's Office did not notify Plaintiff of any policy for requesting a medical accommodation. Nonetheless, Plaintiff informed various members of his command staff of his need for an accommodation to avoid long transport duty due to his disability. He reported his condition and need for the accommodation to his Corporal, as well as his Sergeant. Plaintiff therefore had both a record of a disability and was regarded as disabled under 42 U.S.C. § 12102(2).

12. Although Plaintiff was able to conduct short prisoner transports and the other duties at the jail, he was unable to perform long prisoner transports due to the his need to access a restroom within a short period of time. Because Plaintiff was unable to control his condition, he required, and requested, a reasonable accommodation to avoid long transport duties due to his disability and need for access to appropriate restroom facilities.

13. Thereafter, the Defendant accommodated Plaintiff and did not require him to conduct long transports. In addition, the Defendant would accommodate plaintiff at the Jail by having another co-worker relieve him of duty long enough for him to use the restroom. At times, Plaintiff would still have to use protective undergarments. Plaintiff was substantially limited in major life activities, including his ability to drive for distances or to wait for longer periods of time because his impairments significantly restricted the condition, manner, and duration with which he could do so, as compared to an average person in the general population.

14. With his accommodation, Plaintiff was able to transport inmates on short trips and was able to complete all other tasks and duties required of his position.

15. Plaintiff was originally on the C Shift, but was transferred to B Shift.

16. On or about February 25, 2020, Plaintiff was on duty with the B Shift. There was a "crisis call," meaning that an inmate was being held for a suicide screening. It was determined that the prisoner needed to be transported to Lakeside Behavioral Health System, a mental health facility located in Memphis, Tennessee.

17. As he had done many times before, Plaintiff informed his Corporal that he could not physically transport the inmate to Memphis because of his disability. Plaintiff's Corporal

then informed Sgt. Cooley, who told Plaintiff he had to conduct the transport or he had to "go home."

18. Plaintiff informed Sgt. Cooley that he could not conduct the transport. Sgt. Cooley was aware that Plaintiff needed an accommodation and could not conduct long transports. C/O Paige worked with Plaintiff on B Shift, knew of his disability and the limitations he experienced, was available to perform the long transport, and offered to do so. Inexplicably, Sgt. Cooley would not allow C/O Paige to do so.

19. The Defendant had previously accommodated Plaintiff and did not require that he perform long transports. Other Corrections Officers were available to perform the trip, and Plaintiff was available to work the jail and conduct shorter transports.

20. On this occasion, however, instead of accommodating Plaintiff, Sgt. Cooley told him, "Well, go home."

21. Plaintiff clocked out and then called his Lieutenant, Lt. Duke. Plaintiff had previously informed Lt. Duke of his need for an accommodation for long transports. Plaintiff asked if he was fired, and Lt. Duke asked, "What did the Sergeant say?" Plaintiff replied, "He said just go home."

22. Both Sgt. Cooley and Lt. Duke had previously had to cover Plaintiff's post so he could use the restroom. Both were aware of Plaintiff's disability and his inability to conduct long transports.

23. Plaintiff was subsequently informed that he would be terminated by his Captain, who terminated Plaintiff for "insubordination." The Defendant therefore failed to make a reasonable accommodation for Plaintiff, even though they had done so for years prior to Plaintiff's termination.

24. Plaintiff was qualified and capable of performing his job as a Corrections Officer at the Benton County Jail. Requiring Plaintiff to perform long transports was not consistent with business necessity, as long transports were capable of being performed by numerous other Corrections Officers, and Plaintiff could cover other assignments by reasonable accommodation.

25. The Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12112(a) by discriminating against Plaintiff in regards to Plaintiff's discharge and other terms, conditions, and privileges of employment.

26. The Defendant failed to make a reasonable accommodation and denied Plaintiff employment opportunities because of Plaintiff's known physical limitations and impairments, even though Plaintiff was otherwise qualified for the position.

27. The Defendant terminated Plaintiff because it knew Plaintiff was disabled and experienced limitations as a result of that disability, had a record of being disabled with limitations, and because Plaintiff was disabled and limited in his ability to perform long transports.

28. The Defendant's proffered reason for terminating Plaintiff, namely that Plaintiff was "insubordinate" when he informed the Defendant that he was unable to perform the long transport, was a pretext for unlawful discrimination and a guise to deny Plaintiff a reasonable accommodation.

29. Plaintiff's disability was the substantial motivating factor of the Defendant's decision to terminate him.

**CAUSE OF ACTION**

**COUNT I: VIOLATION OF THE ADA**

**FAILURE TO MAKE A REASONABLE ACCOMODATION**

30. The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* prohibits employers from discriminating against a qualified individual with a disability because of the individual's disability in regard to hiring, advancement, discharge, or other terms, conditions and privileges of employment. 42 U.S.C. § 12112(a).

31. Plaintiff's Type-2 diabetes and the complications stemming from that diagnosis, including the complications leading to ulcerative colitis, GERD, and gastrointestinal distress, constitute physical impairments or physiological disorders or conditions substantially limiting, *inter alia,* Plaintiff's major life activities relating to his digestive system, bowel, bladder, endocrine, and genitourinary systems. 29 C.F.R. § 1630.2(i)(ii) & 1630.2(h)(1).

32. Plaintiff's condition, and the side-effects resulting from the medical treatment of that condition, resulted in Plaintiff needing to take frequent trips to the restroom, which therefore affected one or more of his major life activities, including caring for himself, standing, waiting, and working, including performing the manual task of driving for long distances or standing watch for substantial periods of time. 29 C.F.R. § 1630.2(i).

33. Specifically, Plaintiff was unable to perform major life activities that an average person in the general population could perform, or was significantly restricted as to the condition, manner or duration under which an individual could perform the major life activity, as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

34. Plaintiff's physical impairments that substantially limit one or more of Plaintiff's life activities. In addition, Plaintiff had a history of, and therefore had a record of record of such impairment for purposes of the ADA. Plaintiff was also regarded by the Defendant

as having such an impairment because Plaintiff's condition was widely known and the Defendant perceived that Plaintiff had a physical impairment.

35. Plaintiff was otherwise qualified for the job with or without a reasonable accommodation.

36. Plaintiff was discharged from his employment and therefore suffered an adverse employment action.

37. As a direct and proximate result of the Defendant's unlawful violation of the ADA, Plaintiff has been damaged and the Defendant is liable.

## COUNT II

## VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT AND TENNESSEE DISABILITY ACT

## T.C.A. § 4-21-311 AND T.C.A. § 8-50-103 *Et Seq.*

38. The Tennessee Human Rights Act authorizes a civil action for violation of T.C.A. § 8-50-103. T.C.A. § 4-21-311(e).

39. T.C.A. § 8-50-103, the Tennessee Disability Act, prohibits, *inter alia,* discrimination in the hiring, firing and other terms and conditions of employment of the state of Tennessee or any department, agency, institution, or political subdivision of the state.

40. Plaintiff was qualified for the position. He possessed the requisite skill, education, experience, and training for his position with Benton County. In addition, Plaintiff was able to perform the essential job functions, with or without reasonable accommodation.

41. Plaintiff was disabled.

42. Plaintiff suffered an adverse employment action because he was terminated from his position due to his disability.

43. As a result, the Defendant has violated the Tennessee Disability Act and is therefore liable.

## PUNITIVE DAMAGES

44. Prior to Plaintiff's termination, the Defendant did not make any good-faith effort to comply with the Americans with Disabilities Act or to prevent discrimination in the workplace. The Defendant's supervisors intentionally discriminated against because of his disability, and the Defendant is therefore liable to Plaintiff for an award of punitive damages under 42 U.S.C. § 1981a *et seq.*

**WHEREFORE**, Plaintiff demands judgment as follows:

1. That the Court find that the Defendant discriminated against Plaintiff in violation of the Americans with Disabilities Act, and that the Defendant be found to have terminated Plaintiff because of his disability;

2. That the Plaintiff be awarded judgment accordingly for all damages permitted by law, including compensatory damages, back pay, damages for emotional distress, front pay in the event in the event the Court or jury were to determine reinstatement to be inappropriate, and any and all other relief provided by law;

3. For an award of punitive damages under 42 U.S.C. § 1981a for the Defendant's intentional discrimination, in an amount sufficient to deter the Defendant and others from similar conduct;

4. That the Plaintiff be awarded all the costs and expenses associated with the prosecution of this claim, together with reasonably attorney's fees pursuant to 42 U.S.C. § 1988;

5. That the Plaintiff be awarded such additional, general relief to which the Court may deem him to be entitled;

**The Plaintiff demands a trial by jury for all issues so triable.** .

Respectfully submitted,

THE BLACKBURN FIRM, PLLC


 /s/ Bryant Kroll
W. Gary Blackburn (#3484)
Bryant Kroll (#33394)
213 Rep. John Lewis Way North, Suite 300
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com
*Attorneys for Plaintiff*